Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6139 | **DATE** | 12/19/2001 |
| **CASE TITLE** | Bingo Brain, Inc. vs. California Concepts, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion for partial summary judgment is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 20 2001 date docketed | |
| | Notified counsel by telephone. | | | 276 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 12/19/2001 date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BINGO BRAIN, INC., )
 )
        Plaintiff, )
 )
   v. ) No. 99 C 6139
 )
CALIFORNIA CONCEPTS, INC., ) Judge Rebecca R. Pallmeyer
APPLIED CONCEPTS, INC., )
ANTHONY E. MACZKO d/b/a )
BINGO 2000, and BINGO )
SOLUTIONS, INC., and )
BINGO CONCEPTS, INC., )
 )
        Defendants. )

**DOCKETED**
**DEC 2 0 2001**

## MEMORANDUM OPINION AND ORDER

The parties to this case are competitors in the market for hand-held devices that allow bingo players to play many more bingo cards at one time than they would be able to play without the device. Plaintiff, Bingo Brain, Inc., charges Defendants, California Concepts, Inc., Applied Concepts, Inc. ("ACI"), Bingo 2000, and Bingo Concepts, Inc. (hereinafter collectively "Defendants"), with infringing its patent for a device designed to electronically manage multiple bingo cards. Plaintiff filed the original complaint in this action on September 16, 1999, alleging that Defendants infringed at least one of the nineteen claims of the patent in suit, U.S. Patent No. 4,768,151 (the "`151 Patent"). On June 28, 2000, Defendants moved for summary judgment, (Docket No. 72), arguing that this case is barred by the doctrine of laches. Plaintiff responded, on July 28, 2000, with a motion to amend the complaint to withdraw allegations of infringement of Claims 1-17 of the `151 Patent, (Docket No. 85), which this court granted on October

4, 2000 (Docket No. 146). In an amended complaint, Plaintiff alleged infringement of Claims 18 and 19 of the `151 Patent only. On February 22, 2001 (Docket No. 199), this court granted judgment in favor of Defendants with respect to Claim 19. Thus, what remains of this suit involves only Claim 18 of the Patent. In the pending motion, Defendants argue that Plaintiff's claim of infringement is barred by laches. For the following reasons, Defendant's motion for partial summary judgment is denied.

## Background Regarding Laches Motion

Defendants maintain that a finding of laches is appropriate in this case because, according to their interpretation of the events, Plaintiff delayed filing suit in this case for eleven years. (Defendants' Memorandum in Reply to Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment on Laches (hereinafter, "Def. Repl. Mem.") at 1.) In late 1988, Kenneth Birenbaum,[1] president of Plaintiff Bingo Brain, received a hand-held bingo computer unit produced and marketed by ACI and called "Bingo Mate," in the mail from a bingo supply distributor. In consultation with his attorneys and engineers, Birenbaum considered the question whether Bingo Mate might infringe the `151 Patent. (*Id.* at 4.) On January 30, 1989, Birenbaum contacted Thomas Marzella, a principal, officer and director of Defendant ACI, by telephone and told Marzella that Bingo Brain held a patent for an electronic bingo unit issued on

---

[1] Birenbaum, Steven E. Hutchinson, Mark K. Virkus, and Chester F. Jankowski are each named as co-inventors of the `151 Patent. Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (hereinafter, "Plf. Resp. Def. Stmt. Fact"), ¶ 13, 14. Bingo Brain has owned the `151 Patent since the date of its issuance on August 30, 1988. *Id.* at ¶ 12.

2

August 30, 1988. (Defendants' Statement of Material Facts as to which Defendants Contend there is No Material Issue (hereinafter, "Def. Stmt."), ¶ 21.) Marzella responded by asserting that the Bingo Mate unit did not infringe because it was on the market prior to the issuance of the `151 Patent. *Id.* at ¶ 22. Plaintiff opted not to sue at this point, and Defendants continued to invest in and add features to the Bingo Mate device. Def. Repl. Mem. at 6-7.

One of these added features involved a program change developed in 1995, a change that reduced the number of key commands a player would have to make in order to play different cards in successive bingo games. *Id.* With this change, Defendants began to utilize a feature by which the Bingo Mate device, when signaled that a game of bingo was over, pulls up from memory the next sheet of bingo cards in the pad, rather than requiring the player to enter the number at the top of each sheet of bingo cards into the device before the device would pull up that sheet. *Id.* at 7. Prior to 1995, the Bingo Mate device was incapable of performing this maneuver, which the parties refer to as the "drop pad" or "book drop" feature.[2] *Id.* It is this book drop feature that Plaintiff alleges infringes Claim 18 of the Patent. (Plaintiff's Surresponse to Defendants' Supplemental Memorandum in Support of Motion for Partial Summary Judgment on Laches (hereinafter, "Plf. Surresp.") at 3-4.)

The parties dispute when Birenbaum first became aware that the Bingo Brain

---

[2] The court understands this term as a reference to the fact that then the user of the device inputs just one number from the first page of a pad or book of sheets of bingo cards, the entire pad or book of sheets "drops" into the device's memory.

3

device utilized the book drop method. Defendants have offered evidence that the president of Bingo Brain's distributor advised Birenbaum by at least mid-1996 that Defendants' device performed the book drop maneuver. (Def. Repl. Mem. at 9-10.) Plaintiff, on the other hand, claims that Birenbaum did not become aware of Defendants' use of the book drop method until later, in early 1997. (Plf. Surresp. at 3-4.) This dispute does not alter the outcome of this motion, and the court will assume that Birenbaum became aware of the Bingo Mate "book drop" feature in mid-1996.

In 1997, Birenbaum, on behalf of Plaintiff, contacted both a patent law firm and its patent insurer, the Intellectual Property Insurance Services Corporation ("IPISC") about the new Bingo Mate device that used the book drop method.[3] (Plaintiff's Statement of Additional Facts Requiring the Denial of Summary Judgment on Laches (hereinafter, "Plf. Stmt. Add. Facts"), at ¶ 65.) Then, around March of 1998, Plaintiff contacted an independent engineering firm to obtain a written opinion on the similarities between the Bingo Mate and Plaintiff's own Bingo Brain device. *Id.* at ¶ 66. Upon receipt of the engineering firm's opinion, Plaintiff provided a copy to its patent attorneys for their use in determining whether the Bingo Mate device infringed the `151 Patent. *Id.*

Birenbaum notified IPISC that the Bingo Mate device infringed the `151 Patent by submitting "Early Intervention Letter Request Forms" to IPISC on November 18,

---

[3] Although Plaintiff has not elaborated on this, the court infers that it purchased an insurance policy, effective June 25, 1988, from IPISC to cover some of the costs of protecting and enforcing its patent. Exhibits B, F to Miskin Decl.

4

1998.[4] (Plf. Surresp. at 6; Exhibit F to Declaration of Howard C. Miskin in Support of Defendants' Supplemental Memorandum in Support of Defendants' Motion for Partial Summary Judgment for Laches (hereinafter, "Miskin Decl.").) IPISC policy holders use intervention request letters to request that IPISC intervene with a suspected infringer by, *inter alia*, sending cease and desist letters. (Defendants' Supplemental Memorandum in Support of Defendants' Motion for Partial Summary Judgment for Laches (hereinafter, "Def. Supp. Mem.") at 6.) Birenbaum's letters identified the Bingo Mate 2000 device as infringing Claims 1 and 13, two independent claims of the `151 Patent. (Exhibit F to Miskin Decl.; Def. Supp. Mem. at 6.) Six days later, Birenbaum supplemented the infringement information he provided IPISC by sending a copy of an infringement opinion letter dated September 11, 1998 and prepared by Plaintiff's patent attorneys, stating that the Bingo Mate 2000 infringes, among other Claims, Claim 18 of the Patent. (Plf. Surresp. at 6; Exhibit D to Miskin Decl.) In response to Plaintiff's request for intervention, on December 4, 1998 IPISC wrote to one of Defendants' customers, Ken Diamond, notifying Diamond of the existence of the `151 Patent, and of the insurance policy providing for the enforcement of the `151 patent. (Def. Stmt. ¶ 30; Exhibit J to Declaration of John Adams in Support of Defendants'

---

[4] The parties did not clarify what motivated Birenbaum to send the intervention request letters at this time, nor is it clear on which infringement opinion letter Birenbaum relied as the basis for his statement that Defendants' device infringed the `151 Patent.

5

Motion for Partial Summary Judgment for Laches (hereinafter, "Adams Decl.").)[5]
Defendants' attorney responded to these allegations in a letter sent to IPISC,[6] with a copy to Plaintiff, on January 4, 1999, rejecting the infringement claim and noting the same alleged prior use that Marzella claimed in early 1989. (Exhibit K to Adams Decl.)

Plaintiff filed the complaint in the instant dispute on September 16, 1999.

## Discussion

### A. Summary Judgment Standard

In a patent case, as in any other type of case, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, Nos. 00-1266, 00-1352, __ F.3d __, 2001 WL 1456869 at *2 (Fed. Cir. 2001); *Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH*, 139 F.3d 877, 880 (Fed. Cir. 1998). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1364 (Fed. Cir., 2001), *quoting Chiuminatta Concrete Concepts, Inc. v. Cardinal*

---

[5] The record does not state whether Plaintiff's insurance company ever filed a lawsuit against Diamond. The court is unaware of whether or how this issue between Diamond and Plaintiff's insurance company has been resolved.

[6] Defendant ACI sent Defendants' attorney a copy of IPISC's letter to Diamond, but it is not clear how this letter came to the attention of Defendant ACI. Exhibit K to Adams Decl.

6

*Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998). The moving party bears the burden of demonstrating the absence of all genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

B. **Laches**

Under 35 U.S.C. § 282, laches is an equitable defense that bars recovery by the plaintiff for any damages incurred before the initiation of the infringement suit. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (*en banc*). In order to prevail on this defense, Defendants must show: (1) that Plaintiff's delay in bringing suit was unreasonable and inexcusable, and (2) that Defendants suffered material prejudice as a result of the delay. *Id.* A presumption of laches arises where more than six years has elapsed between the time the plaintiff knew or should have known of the alleged infringing activity and the time of filing suit. *Id.* Where the presumption is in effect, the court infers unreasonable delay and prejudice from the length of the delay and the burden of going forward with the evidence shifts to the patentee. *Id.* Where the presumption does not arise, the party claiming laches bears the burden of proving the two elements, set forth above, that the delay was unreasonable and inexcusable, and that it materially prejudiced the party claiming laches. *Id.*

1. **The Laches Presumption Does Not Apply**

Defendants argue Plaintiff has had knowledge of Defendants' alleged infringement since late 1988, and thus, unreasonably delayed filing this action for

7

nearly eleven years. If Defendants were correct in this characterization of the time line, a presumption of laches would arise. Plaintiff counters that its infringement claim involves only the book drop feature of Claim 18 of the Patent, a feature that was not incorporated into Defendants' Bingo Mate devices until 1995. The infringement implicated by virtue of this change, argues Plaintiff, is sufficiently different from the infringement suspected in 1988 as to constitute a new and separate infringing activity. Thus, Plaintiff urges, the period of delay for laches does not start until Plaintiff knew or should have known about Defendants' 1995 Bingo Mate device utilizing the book drop feature.

The Federal Circuit has not resolved the key question here: what sort of change in allegedly infringing activity sufficiently distinguishes the new activity from previous infringing activity to give rise to a new infringement claim, such that the laches clock starts anew? *See North Am. Philips Corp. v. Taito Am. Corp.*, No. 93 C 3261, 1997 WL 543111 at *5 (N.D. Ill. Aug. 29, 1997). In resolving these disputes about when the laches period began to run, district courts have applied the principle that, "where an alleged infringer's conduct changes over time – as, for example, where the infringer begins to manufacture a different product – a new period of delay begins for laches purposes with each change in conduct, unless the infringer can show that its prior conduct is substantially similar to the more recent conduct." *Intertech Licensing Corp. v. Brown & Sharpe Manuf. Co.*, 708 F. Supp. 1423, 1435 (D. Del. 1989). A district court in this district has applied a slightly more rigorous standard, under which Defendants would have to show that their alleged infringing devices were "the same or virtually

8

the same" in 1988 and 1995, to justify calculating the laches period in 1988. *Celotex Corp. v. Jacuzzi Whirlpool Bath, Inc.*, No. 76 C 2219, 1980 WL 30304 (N.D. Ill. July 22, 1980) (Aspen, J.).

The court does not, at this time, need to resolve which standard will apply here because under either standard, there is a dispute of material fact. Whether the 1988 and 1995 versions of Defendants' Bingo Mate device were substantially similar or virtually the same (depending on which standard the court applies), or whether the 1995 program change to the book drop method constituted a material change to the device, is unquestionably a matter on which the parties do not agree. As a result, the court cannot conclude as a matter of law that a laches presumption applies.

Even absent that presumption, Defendants argue that laches exists here because the time that elapsed after mid-1996 and before Plaintiff filed the instant suit constituted an unreasonable and materially prejudicial delay. Defendants maintain that Plaintiff's brief "is silent on why . . . [Plaintiff] did not file a complaint in 1995, or even 1996 or 1997 or 1998 . . . ." Def. Repl. Mem. at 7. In the absence of the presumption, however, the burden was on Defendants to first show that: a) Plaintiff's delay was both unreasonable and inexcusable, and b) Defendants suffered material prejudice attributable to the delay. *See A.C. Aukerman Co.*, 960 F.2d at 1028. As described below, Defendants' submissions do not support summary judgment in their favor on these issues.

2. **Unreasonable and Inexcusable Delay**

First, Defendants bear the burden of showing that Plaintiff's delay was

9

unreasonable and inexcusable. Defendants have offered mere conclusory statements without supporting this conclusion by reference to the facts and circumstances of this case. Because the laches presumption does not apply on the resolution of this summary judgment motion, Defendants' reliance on the mere fact of delay does little to advance their position. *See e.g., Ecolab, Inc.*, 264 F.3d at 1371, ("[t]he length of time that may be deemed unreasonable has no fixed boundaries, but rather depends on the circumstances of the case."); *A.C. Aukerman Co.*, 960 F.2d at 1028, ("[a]t all times, the defendant bears the ultimate burden of persuasion of the affirmative defense of laches.") As Plaintiff points out, Defendants relied heavily on the assumption that the time period before Plaintiff became aware of Defendants' use of the book drop method was relevant, charging repeatedly that it was unreasonable of Plaintiff not to file suit until 1999. Contrary to Defendants' assertions, the court notes that Plaintiff was not silent as to why it did not sue prior to 1999; Plaintiff explained that from the time it became aware of Defendants' use of the book drop method, it has been engaged in the process of consulting with patent attorneys and engineers to assess the likelihood of infringement, as well as working with IPISC to preserve the claim under its policy. Defendants have not effectively challenged that explanation and the court is unable to conclude that the three-year delay was unreasonable and inexcusable as a matter of law.

In at least one case not cited by either party here, the Federal Circuit found a three-year delay unreasonable, but in that case, the patentee offered no explanation for its delay, either in the trial court or on appeal. *Rosemount, Inc. v. Beckman*

*Instruments, Inc.*, 727 F.2d 1540, 1550 (Fed. Cir. 1984). In *Rosemount*, shortly after the plaintiff filed an infringement lawsuit, defendant notified plaintiff about the existence of another potentially-infringing product that plaintiff had not identified in the original complaint. Plaintiff declined to include this additional product in an amended or supplemental complaint, and ultimately obtained monetary damages on a verdict of infringement and an injunction with respect to the original infringement only. *Id* at 1542. Three years after first being notified about the existence of the other potentially-infringing product, plaintiff charged that defendant violated the injunction because this latter product also infringed plaintiff's patent, and defendant raised laches as an affirmative defense. The district court and the Federal Circuit, although again finding infringement, sided with defendant on the laches issue, barring plaintiff from recovering any damages it incurred during the three-year delay because plaintiff offered no explanation for it. *Id.* at 1550.

In another case, however, the Federal Circuit acknowledged that a three-and-one-half year delay can be reasonable in light of plaintiff's explanation for the delay. In *Vaupel Textilmaschinen KG*, plaintiff notified defendant that defendant's device infringed plaintiff's patent at a May 1985 trade show. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 878-79 (Fed. Cir. 1991). Defendant did not sell any of its devices as a result of the trade show, and plaintiff, therefore, declined to pursue enforcement of its patent. *Id.* at 879. Two years later, in October of 1987, defendant again displayed its device at a trade show in Paris, France, and when

plaintiff warned defendant that shipment of the device to the United States would infringe plaintiff's patent, defendant responded that it had already been shipping its devices to the United States. *Id.* After locating one of defendant's customers and confirming subsequent sales, plaintiff filed suit in August of 1988. *Id.* The Federal Circuit was clear in its statement that such a circumstance precluded a finding of laches, notwithstanding a delay of more than three years. (*Id.*); *see also Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 774 (Fed. Cir. 1995) ("[a]lternatively, . . . the district court could have concluded that the portion of the delay from 1983 to 1986 was not unreasonable.") Although, in *Vaupel Textilmaschinen SPA*, plaintiff might have brought suit immediately after notice of potential infringement in 1985, plaintiff declined, deciding not to file suit until 1988, when defendant's infringement was certain. Much like the plaintiff in *Vaupel Textilmaschinen SPA*, Plaintiff attributes its delay to its investigation of the potential infringement. Plaintiff sought support, from both patent attorneys and engineers, for its initial hunch that the Bingo Mate device infringed the '151 Patent. On its face, such a course of action is prudent. In any event, Defendants have not met their burden of showing that this conduct was unreasonable and inexcusable.

It is important to clarify that the court does not hold that investigation and consultation with attorneys and engineers will always preclude a finding of laches. In the circumstances of this case, however, Defendants have not shown that Plaintiff's actions were unreasonable as a matter of law. The court recognizes, further, the

12

potential message sent to patentees by a decision that critically scrutinizes the amount of time a patentee takes to confirm the validity of its infringement claim, where such activities truly account for the delay. Neither patentees nor alleged infringers would benefit from a holding that encourages frivolous suits hastily brought to avoid the laches defense.

### 3.  Material Prejudice Attributable to the Delay

If Defendants can meet their burden of establishing unreasonable delay, they will still be required to show that they suffered either economic or evidentiary prejudice that would have been avoided had Plaintiff filed suit earlier. *See Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998). Defendants' primary argument here rests, again, on the assumption that evidence from before the time that Plaintiff became aware Defendants were utilizing the book drop method is relevant. Specifically, Defendants identify various kinds of evidence and witnesses from the early and mid-1980s that are now unavailable, to demonstrate that they have been prejudiced by Plaintiff's delay. Defendants also allege that they made significant investments in the Bingo Mate device from 1995 to 1997 in reliance upon Plaintiff's silence, or failure to pursue the infringement matter raised in 1989.

As previously noted, a material question of fact exists as to whether Defendants materially changed their allegedly infringing conduct when they began using the book drop method in 1995 so as to re-start the laches clock. Resolution of this issue will dictate how far back the relevant evidence in this case will go, as well as whether investments Defendants made before Plaintiff knew about Defendants' use of the book

drop method are relevant. Again, the court cannot resolve the question of whether Defendants' use of the book drop method constituted a material change in its infringing activity on this motion for summary judgment. Given the court's finding that Defendants have not shown there are no disputes on the issue of unreasonable and inexcusable delay, the court need not fully resolve the issues of material prejudice to dispose of this motion.

## CONCLUSION

Defendants' motion for partial summary judgment is denied.

ENTER:

Dated: December 19, 2001

REBECCA R. PALLMEYER
United States District Judge

(bingolaches..ord)